# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

MAR 28 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Samsung Galaxy 8+ Cellular Phone, Model SMG955U, )
Serial No. R58J45XK37W, IMSI 311480440997833 )

Case No.

19MJ1297

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation of controlled substances |
| 21 U.S.C. § 963 | Conspiracy |

The application is based on these facts:

SEE AFFIDAVIT (Attached and incorporated within)

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Michael Lesley, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/28/19

*Judge's signature*

City and state: San Diego, CA

Honorable Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

# Attachment A

## *Item to be Searched*

The item to be searched is described as follows:

Samsung Galaxy 8+ Cellular Phone

Model SMG955U

Serial No. R58J45XK37W

IMSI 311480440997833

(The "**Target Telephone**")

The **Target Telephone** is currently in the possession of the Department of Homeland Security and is presently stored at 9495 Customhouse Plaza, San Diego, CA 92154.

*Affidavit in Support of Search Warrant*

1

## Attachment B

### *Items to be Seized*

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from October 12, 2018 up to and including December 13, 2018:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

e. tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

1         g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

2

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Michael Lesley, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B:

> Samsung Galaxy 8+ Cellular Phone
> Model SMG955U
> Serial No. R58J45XK37W
> IMSI 311480440997833
> (The "**Target Telephone**")

This search supports an investigation and prosecution of Jonathan Martinez ("MARTINEZ"), who is presently charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Telephone** from MARTINEZ on December 12, 2018, when he was arrested at the San Ysidro Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. The **Target Telephone** is currently in the possession of the Department of Homeland Security and is presently stored at 9495 Customhouse Plaza, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Telephone** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in

this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5. I am a Special Agent for Homeland Security Investigations ("HSI") and have been so employed since April 2016. Prior to my employment with HSI, I was employed as a Border Patrol Agent with the United States Border Patrol from October 2009 to April 2016.

6. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

7. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. I have worked as the case agent, directing specific drug-related investigations; I have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; I have participated in the execution of search warrants; I have initiated and executed arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances; and I have interviewed defendants and witnesses relating to the illegal trafficking of controlled substances.

8. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular

2

telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

9. In the course of my duties, I have been a case agent directing drug-related investigations. I have participated in many aspects of criminal investigations including reviewing evidence, conducting physical and electronic surveillance, and executing search and arrest warrants. I have interviewed defendants and witnesses while conducting various investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

10. Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

   a. Drug smugglers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

   b. Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

   c. Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

   d. Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

   e. Drug smugglers use cellular telephones to notify or warn accomplices

3

*Affidavit in Support of Search Warrant*

about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

   f. The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

  11. Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

## FACTS IN SUPPORT OF PROBABLE CAUSE

  12. According to reports prepared by Customs and Border Protection ("CBP") Officers Murray and Tovar, at about 3:45 a.m. on December 12, 2018, MARTINEZ entered the United States at the San Ysidro POE in a black Nissan Altima sedan, bearing California license plates (the "Vehicle"). Officer Murray was conducting roving K-9 pre-primary inspection operations at the time, and his K-9 Unit expressed interest in the trunk area of the Vehicle. As this was happening, Officer Tovar contacted MARTINEZ, the driver and sole occupant of the Vehicle. MARTINEZ presented a United States passport card, told Officer Tovar he was going to work at "Northgate Market," and provided two negative customs declarations.

  13. Per Officer Tovar's report, he had MARTINEZ turn off the Vehicle and inspected the interior; in that inspection, Officer Tovar found a brick-shaped, vacuum-sealed package on the floor. Officer Tovar told Officer Murray about this package, and Officer Tovar responded that he had also found packages in the trunk. Per Officer Murray's report, he searched the trunk space of the Vehicle after the K-9 alerted on it and found a

4

plastic package in a void next to the wheel well of the Vehicle.

14. At this point, Officer Tovar had MARTINEZ get out of the Vehicle, placed him in handcuffs, and had him escorted to the security office. He also notified other officers of the K-9 alert on the Vehicle. From there, the Vehicle was sent to secondary inspection.

15. Per CBP Officer Santiago's report, Officer Santiago was operating the "Z-Portal" X-Ray machine in secondary inspection when the Vehicle was brought to the screening area; this occurred at about 3:48 a.m. Officer Santiago x-rayed the Vehicle and saw anomalies in the spare-tire well of the Vehicle.

16. Per CBP Officer Jusino's report, at about 4:10 a.m., Officer Jusino was assigned to do a possible narcotics seizure from the Vehicle. Officer Jusino reported learning of anomalies in the trunk area and under the seats. In a physical inspection of the Vehicle, Officer Jusino found two packages hidden under the driver's seat, two packages hidden under the passenger's seat, one package in the rear passenger-side quarter-panel area, one package in the rear driver-side quarter-panel area, and sixteen packages in the spare-tire well. Per CBP Officer Martinez, contents of 20 packages tested presumptively positive for cocaine. The packages, 22 in total, had a gross weight of 46.54 kilograms.

17. After finding these 22 packages, Officer Jusino placed MARTINEZ under arrest and seized the Vehicle, the cocaine, and MARTINEZ's personal effects, including the **Target Telephone**.

18. Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling in near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico to the United States by hiding the drugs in hidden compartments of cars, and in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use). Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers will take the drugs to a discreet location to transfer

them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

19. Given the facts surrounding MARTINEZ's arrest, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of MARTINEZ will be found in the **Target Telephone**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

    a.    tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    e.    tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

    f.    tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

*Affidavit in Support of Search Warrant*

       g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

20. Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of the **Target Telephone** is from October 12, 2018 up to and including December 13, 2018 (*i.e.*, the day after the events described in this affidavit).

## **METHODOLOGY**

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

7

*Affidavit in Support of Search Warrant*

Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24. On December 12, 2018, an HSI Task Force Officer attempted to download the **Target Telephone**. I have not relied on any information that may have been obtained in that search here.

25. At the time of the events described in this affidavit, the case was assigned the unique identifying number 2019250400038001 LI0003; that number was associated with the **Target Telephone**, which has been held in a secure retaining facility at the location noted in Attachment A. On December 12, 2018, I reviewed the **Target Telephone** at the noted location and confirmed that it is the device identified in Attachment A.

**CONCLUSION**

26. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that MARTINEZ used the **Target Telephone** to facilitate the offense of drug smuggling and to communicate with co-conspirators. The **Target**

8

*Affidavit in Support of Search Warrant*

1 **Telephone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

27. Because the **Target Telephone** was promptly seized following MARTINEZ's arrest at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by MARTINEZ continues to exist on the **Target Telephone**. As stated above, I believe that the date range for this search is from October 12, 2018, up to and including December 13, 2018.

28. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Telephone**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
MICHAEL LESLEY
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this __28__ day of March, 2019.

_____
THE HON. BERNARD G. SKOMAL
United States Magistrate Judge

9

*Affidavit in Support of Search Warrant*